1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CHARLES ULMSCHNEIDER, | ) | 1:11-cv-1767 AWI GSA |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER DISMISSING CASE WITH LEAVE |
| | ) | TO AMEND |
| LOS BANOS UNIFIED SCHOOL | ) | |
| DISTRICT; LOS BANOS TEACHERS' | ) | |
| ASSOCIATION; DAN MARTIN; DUKE | ) | |
| MARSHALL; DR. CHARLES MARTIN; | ) | |
| CHERYL MOODY; ANTHONY | ) | (Doc. 1) |
| PARREIRA; JAMES ORR; SHANNA | ) | |
| SPIVA; STEVE TIETJEN; AARON | ) | |
| BARCELLOS; COLLEEN MENEFE | ) | |
| DENNIS AREIAS; DAN GOIN; ANDREE | ) | |
| SOARES; CAROLE WYNNE, RANDY | ) | |
| NOCITO; DOES 1 through 50 | ) | |
| | ) | |

## INTRODUCTION

Plaintiff Charles Ulmschneider ("Plaintiff"), appearing pro se and proceeding in forma pauperis, filed the instant complaint alleging employment discrimination.  (Doc. 1).  Plaintiff is challenging his termination as a teacher from Los Banos Unified School District ("LBUSD"). He names LBUSD; the Los Banos Teachers' Association ("LBTA"); Dan Martin, the principal at Los Banos High School ("LBHS"); Duke Marshall, the Dean of LBHS; Charles Martin, the Assistant Superintendent of LBHS; Cheryl Moody the President of the LBTA; Anthony Parreira, the Vice President of the LBTA; James Orr, a member of the LBTA; Shanna Spiva, the Personnel Director of LBUSD; Dr. Steven Tietjen, the Superintendent of LBUSD; Aaron

1    Barcellos the President of the LBUSD school board; Carole Wynne, a teacher and Chair of the

2    LBUSD Foreign Language Department; Randy Nocito, a teacher and member of the Peer

3    Assistance Review ("PAR") at LBHS; and Colleen Menefee, Dennis Areias, Don Goin, all

4    members of the LBUSD School Board (collectively, "Defendants").

5                                      **DISCUSSION**

6    A.    Screening Standard

7            Pursuant to 28 U.S.C. § 1915(e)(2), the court must conduct an initial review of the

8    complaint for sufficiency to state a claim.  The court must dismiss a complaint or portion thereof

9    if the court determines that the action is legally "frivolous or malicious," fails to state a claim

10   upon which relief may be granted, or seeks monetary relief from a defendant who is immune

11   from such relief.  28 U.S.C. § 1915(e)(2).  If the court determines that the complaint fails to state

12   a claim, leave to amend may be granted to the extent that the deficiencies of the complaint can be

13   cured by amendment.

14          A complaint must contain "a short and plain statement of the claim showing that the

15   pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

16   required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

17   conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing

18   Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)).  Plaintiff

19   must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its

20   face.'" Ashcroft v. Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555).  While factual

21   allegations are accepted as true, legal conclusions are not.  Id. at 1949.

22          A complaint, or portion thereof, should only be dismissed for failure to state a claim upon

23   which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in

24   support of the claim or claims that would entitle him to relief.  See Hishon v. King & Spalding,

25   467 U.S. 69, 73 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v.

26   Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In reviewing a

27   complaint under this standard, the Court must accept as true the allegations of the complaint in

28   question, Hospital Bldg. Co. v. Trustees of Rex Hospital, 425 U.S. 738, 740 (1976), construe the

                                            2

1  pro se pleadings liberally in the light most favorable to the plaintiff, Resnick v. Hayes, 213 F.3d

2  443, 447 (9th Cir. 2000), and resolve all doubts in the Plaintiff's favor, Jenkins v. McKeithen,

3  395 U.S. 411, 421 (1969).

4   B.   Plaintiff's Allegations

5       Plaintiff began working at LBHS as a foreign language teacher in July 1999.  He contends

6  that he has excellent educational and teaching credentials which is demonstrated by the fact that

7  he received tenure in April 2001.[1]  Doc. 1, at Exhibit A.  However, he also had a history of

8  speaking out against racial, language, cultural, and civil rights discrimination at LBHS.

9  Specifically, Plaintiff alleges that his half-Hispanic daughter was discriminated against by the

10 district when she was not allowed to attend LBHS and that he had to be insistent that she receive

11 equal treatment on sports teams and in the band.[2]  Id. at Exhibit B.

12      Plaintiff alleges that because he was outspoken about the discriminatory practices at the

13 school, he was placed into a mandatory PAR program in 2003-2004.[3]  Id. at Exhibits F & G.  The

14 PAR program is designed for teachers who need assistance in improving various aspects of their

15 teaching.  The assigned teacher works with a consulting teacher who offers supervision to

16 promote professional development and improve job performance.  Plaintiff alleges he was the

17 only teacher in the entire district who had been placed in the PAR program after five years of its

18 existence.

19      After being placed in the PAR, Plaintiff filed three complaints against LBUSD and

20 LBTA.  The first was a complaint filed with the Office for Civil Rights ("OCR") at the United

21 States Department of Education in Oct. 2004, concerning segregation and the lack of inclusion of

22 ─────────────────────

23      [1] Plaintiff now sits as an elected governing Board Member Trustee for the Visalia Unified School District.
   Plaintiff is also a substitute teacher for Kings County where he teaches at several secondary level schools.  (Doc.1, at

24 pg. 6).

25      [2] Although Plaintiff alleges that his daughter was not initially permitted to attend LBHS, it appears that she
   did ultimately attend this school.  Moreover, the complaint references the fact that the board changed its policy

26 regarding this issue. (Doc. 1, at pg. 7).

27      [3] Although Plaintiff's complaint alleges he was placed on PAR because he was complaining of
   discriminatory practices, the exhibits attached to the pleading indicate that his formal complaints regarding
   discriminatory practices and teacher's credentials occurred after he was placed on PAR in the 2003-2004 academic

28 year.  Id. at Exhibit L.

1  Hispanic and other minority students.  Id. at Exhibit C.  The second complaint was filed with the

2  Public Employment Relations Board ("PERB") in October 2004 against the LBTA for

3  intentionally requiring that Plaintiff attend the PAR for unfounded, baseless, and retaliatory

4  reasons. Id. at Exhibit D.  The third complaint was filed in November 2004 with the California

5  Department of Education on the basis that teachers were teaching classes outside of their

6  credentialed areas.[4] Id. at Exhibits F and G.  Plaintiff alleges that the filing of these complaints

7  resulted in the administration's "orchestrated effort toward removing him from his position."

8  (Doc. 1, pg. 9).  Moreover, in November 2004, Plaintiff was injured on the job and he filed a

9  Worker's Compensation Case.  As a result of this injury, he missed work once a week during the

10  afternoons which he contends also served as a basis for the retaliation

11      Plaintiff alleges that he was harassed over the next several years by the superintendent,

12  teachers and members of LBTA.  For example, he believes he was unjustly required to be on

13  PAR for the remainder of the time he was employed in the district.  Id. at Exhibit L. Moreover,

14  he contends that none of the supervising teachers whom he worked with in PAR spoke Spanish

15  or had teaching credentials in foreign languages which was Plaintiff's areas of expertise.[5]

16  Plaintiff alleges he complained to the union several times regarding this issue but the union

17  refused to process his grievances.  In addition to being placed in PAR, Plaintiff contends he

18  received several formal letters of reprimand in front of other teachers, and that he received biased

19  and unsubstantiated performance evaluations. Id. at Exhibits H, J, K, L.

20      Although the exact timing is unclear, the district began administrative proceedings to

21  terminate Plaintiff's employment.  By early 2007, Plaintiff alleges that the teachers union refused

22  to negotiate on his behalf.  The superintendent offered him $106,000.00 to leave, however,

23  Plaintiff refused the offer.  He was suspended without pay on January 1, 2008.

24      Plaintiff had a dismissal hearing in July 2008 which he alleges was unfair and biased

[4] Although not outlined in the instant complaint, Plaintiff also attached a complaint he filed with the California Department of Fair Employment and Housing dated December 14, 2006. (Doc. 1, Exhibit I).

[5] Plaintiff has two degrees and two teaching credentials is Spanish and German.

1   against him.  Plaintiff was officially terminated on September 11, 2008.  Plaintiff filed a

2   complaint with the Equal Employment Opportunity Commission ("EEOC") in February 2009.

3   The EEOC issued a right to sue letter on July 28, 2011. (Doc. 1, Exhibits M and N).   Plaintiff

4   filed the instant action in this court on October 24, 2011.

5        As a result of Defendants' conduct, Plaintiff alleges he suffered lost wages, humiliation,

6   emotional distress, mental and physical pain, and anguish.  He has alleged retaliation in violation

7   of Title VII of the Civil Rights Act of 1964,  42 U.S.C. § 2000e -3 et seq ("Title VII"), creation

8   of hostile work environment,[6] as well as state law claims for wrongful termination in violation of

9   public policy, California Government Code Sections 12900 et seq., and 12940 et seq., violations

10  of California Education Code  § 44110-44114, breach of implied covenant of good faith and fair

11  dealing, breach of contract, intentional infliction of emotional distress, and defamation of

12  character.  Plaintiff seeks general, special, incidental, consequential and punitive damages,

13  prejudgment interest, costs, and reinstatement of his position at LBHS.

14              C.    Analysis

15       A review of Plaintiff's complaint reveals that the complaint is deficient and needs to be

16  amended for the reasons set forth below.  In summary, it appears that this Court may not have

17  jurisdiction to hear Plaintiff's claims as alleged because his claims for retaliation and harassment

18  may not fall under Title VII.  However, Plaintiff will be given leave to amend the complaint to

19  attempt to remedy this deficiency.  If Plaintiff cannot state a cognizable federal claim, this Court

20  will recommend that the case be dismissed.  Furthermore, it appears that Plaintiff had an

21  administrative hearing regarding his termination.  There is limited information in the Complaint

22  about this hearing.  Plaintiff is advised that he needs to provide more information to the Court

23  regarding the nature and outcome of those proceedings as any findings that were made in those

24  proceedings may impact Plaintiff's claims.

25       When amending the complaint, Plaintiff is advised that the causes of action must be more

26  clearly organized so that there is one cause of action for each alleged violation of law.  For

27

28
    [6] The Court assumes this is pursuant to Title VII as the complaint it not clear.

example, the instant complaint alleges several violations of law under the first cause of action. This is improper.  In addition the  amended complaint must clearly identify which defendant is named under each cause of action.  The instant complaint appears to allege that all defendants violated all of the causes of action,  which does not appear likely.  In order for the Court to properly screen Plaintiff's complaint, it must be clear which defendants are alleged to have committed each specific violation.  Finally, the amended complaint must contain all necessary allegations for each cause of action and each defendant's actions must be linked to the specific violation of law alleged.  Mere speculation regarding a defendant's behavior or making legal conclusions are not sufficient to state a claim.

1.   *Applicable Legal Standards*

In the paragraphs that follow, the court will provide Plaintiff with the legal standards that may apply to his claims.  *Plaintiff should carefully review the standards and amend only those claims that he believes, in good faith, are cognizable.*

a.   **Title VII Claims**

*Disparate Treatment*

42 U.S.C. § 2000e-2(b) provides that it shall be an unlawful employment practice for an employer to fail to refuse, or otherwise discriminate against, any individual because of his race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2.  To establish a prima facie case of disparate treatment under Title VII Plaintiff must show that: "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." Peterson v. Hewlett-Packard Co., 358 F.3d 599, 603 (9th Cir. 2004); see also Raad v. Fairbanks North Star Borough School Dist., 323 F.3d 1185, 1195-96 (9th Cir. 2003) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Since Plaintiff has not alleged that he is a member of one of the protected classes, this provision does not appear to apply to his case.  However, the legal standard is provided in an

abundance of caution since Plaintiff's race is not clearly identified and he makes reference to disparate treatment in the complaint.

*Hostile Work Environment*

To establish a prima facie case for a hostile-work environment claim, Plaintiff must establish that (1) the defendants subjected the plaintiff to verbal or physical conduct based on his race [or one of the other protected classes]; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.  Surrell v. California Water Service Co., 518 F. 3d 1097, 1108 (9th Cir. 2008) citing  Manatt v. Bank of America, NA, 339 F.3d 792, 798 (9th Cir. 2003).

As noted above, this standard does not appear to be applicable to Plaintiff's case but is provided because he has alleged this cause of action in his complaint.

*Retaliation*

Title VII also states that:

> It shall be an unlawful employment practice for an employer to discriminate
> against any of his employees or applicants for employment, for an employment
> agency, or joint labor-management committee controlling apprenticeship or other
> training or retraining, including on-the-job training programs, to discriminate
> against any individual, or for a labor organization to discriminate against any
> member thereof or applicant for membership, because he has opposed any practice
> made an unlawful employment practice by this subchapter, or because he has
> made a charge, testified, assisted, or participated in any manner in an
> investigation, proceeding, or hearing *under this subchapter*.
> 42 U.S.C. 2000e-3(a).

An employee may prevail on a Title VII retaliation claim if the employee can show that he or she opposed an unlawful employment practice under Title VII, that he or she was the object of an adverse employment action, and that the adverse action was caused by his or her opposition to an unlawful employment action. In other words, "[t]itle VII prohibits retaliation only against individuals who oppose discriminatory employment practices or participate in complaints or investigations *of employment practices* prohibited by title VII." See,  Lowrey v. Texas A & M University System  117 F.3d 242, 249 (5th Cir. 1997) ("By its plain language therefore, title VII does not prohibit retaliation against complainants who challenge [availability of sports programming and opportunity because of one's sex,] as such complaints are wholly unrelated to

1  the discriminatory employment practices proscribed by title VII"). "The mere fact that an

2  employee is participating in an investigation or proceeding involving charges of some sort of

3  discrimination, however, does not trigger the [retaliation protections under Title VII]; the

4  underlying discrimination must be reasonably perceived as discrimination under Title VII."

5  Learned v. City of Bellevue, 860 F. 2d 928, 932 (9th Cir. 1988).  In other words, the opposed

6  conduct must fairly fall within the protection of Title VII to sustain a claim of unlawful

7  retaliation.  Silver v. KCA, Inc., 586 F. 2d 138, 141-142 (9th Cir. 1978) (stressing the necessity

8  that any complaints based on Title VII must relate to an *unlawful employment practice*).

9        Here, it is clear that Plaintiff has alleged that he was terminated from his employment and

10  that he filed a complaint with the EEOC.  However, the reason that he was allegedly retaliated

11  against was not as a result of being a member of the protected class, nor was it as a result of him

12  filing a complaint alleging an unlawful employment action based on one of the protected classes.

13  Rather, the alleged retaliation and harassment seems to be premised on the grounds that: 1) he

14  filed complaints alleging that the school district was engaging in racially discriminatory

15  educational practices against Hispanic students, and 2) that the school district was out of

16  compliance regarding teacher credentialing. It appears therefore,  that Plaintiff may not be able to

17  state a claim under Title VII, the purpose of which is to prohibit *unlawful employment practices*

18  and/or to protect individuals who report *unlawful employment practices based on race, color,*

19  *religion, sex, or national origin*.

20        Notwithstanding the above, Plaintiff is advised that to establish a prima facie case of

21  retaliation under Title VII, the employee must show that he engaged in a protected activity, he

22  was subsequently subjected to an adverse employment action, and that a causal link exists

23  between the two. Dawson v. Entek Intern, 630 F. 3d 928, 926 (9th Cir. 2011) (citing Jordan v.

24  Clark, 847 F.2d 1368, 1376 (9th Cir. 1988)).  The causal link can be inferred from circumstantial

25  evidence such as the employer's knowledge of the protected activities and the proximity in time

26  between the protected activity and the adverse action.  Id.  If a plaintiff establishes a prima facie

27  case of unlawful retaliation, the burden shifts to the defendant employer to offer evidence that the

28  challenged action was taken for legitimate, non-discriminatory reasons.  See Nidds v. Schindler

Elevator Corp., 113 F.3d 912, 917 (9th Cir. 1996).  If the employer provides a legitimate

explanation for the challenged decision, the plaintiff must show that the defendant's explanation

is merely a pretext for impermissible discrimination.  See Ray v. Henderson, 217 F.3d 1234, 1240

(9th Cir. 2000).  If after examining these standards, Plaintiff believes he can state a claim under

Title VII, he is further advised that Title VII does not provide a cause of action for damages

against supervisors or fellow employees.  Holly D. v. California Institute of Technology, 339 F.

3d 1158, 1179 (9ᵗʰ Cir. 2003).

### Federal Court Jurisdiction

Plaintiff is advised that if he is unable to state a federal claim, this Court will recommend

that the matter be dismissed.   Federal courts can adjudicate only those cases in which the United

States Constitution and Congress authorize them to adjudicate which  are essentially those cases

involving diversity of citizenship (in which the matter in controversy exceeds the sum or value of

$75,000 and is between citizens of different states), or a federal question, or to which the United

States is a party.  28 U.S.C. §§ 1331 and 1332; See also, Kokkonen v. Guardian Life Ins. Co.,

511 U.S. 375 (1994); Finley v. United States, 490 U.S. 545, 109 S.Ct. 2003, 2008 (1989).  Here,

since all of the parties are residents of California, and the fact that the United States is not a

party, the only basis for the exercise of Federal Jurisdiction is if Plaintiff is able to state a claim

under federal law.  If Plaintiff presents a cognizable federal claim, the Court may exercise

supplemental jurisdiction over the state law claims.  28 U.S.C. § 1367.   However, if Plaintiff is

only able to allege cognizable state law claims, jurisdiction in this Court is not proper.

**b.**    **State Law Claims**

### Fair Employment Housing Act ("FEHA")

Plaintiff has alleged claims pursuant to Cal. Gov't Code  § 12900 et seq. and 12940 et

seq.  Under California statutory law, an employer may not discriminate against an individual

seeking, obtaining, or holding employment based on that employee's race.  Cal. Gov't Code  §

12920. The FEHA makes it an unlawful employment practice for an employer to discriminate

against, harass, or discharge an employee because of race, national origin, or sex. Cal. Gov. Code

§ 12940 (a) and (j).  Moreover, FEHA makes it unlawful for "any employer, labor organization,

9

1    employment agency, or person to discharge, expel, or otherwise discriminate against any person

2    because the person has opposed any practices forbidden under this part or because the person has

3    filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov. Code §

4    12940(h).

5         Claims of employment discrimination under the FEHA are analyzed under the same

6    framework as those brought under Title VII. Brooks v. City of San Mateo, 229 F. 3d 917 (9th Cir.

7    2000); Beyda v. City of Los Angeles, 65 Cal. App. 4th 511, 517 (1998). Here, Plaintiff needs to

8    closely examine these statutes to determine whether they apply to his case. If Plaintiff decides to

9    state a claim under a Federal statute, Plaintiff shall state with particularity which section of the

10   statute he is relying upon rather than making broad references to an entire statutory scheme.

11        Moreover, an employee who experiences a claim under FEHA must file a complaint with

12   the Department of Fair Employment and Housing ("DFEH") and the complaint must be filed

13   within one year after the date in which the unlawful practice occurred. Cal. Gov. Code, § 12960

14   (b) and (d). "Under the FEHA, the employee must exhaust the administrative remedy provided

15   by the statute by filing a complaint with the [DFEH] and must obtain a notice of right to sue from

16   the [DFEH]  in order to be entitled to file a civil action in court based on violations of the FEHA.

17   The timely filing of an administrative complaint is a prerequisite to the bringing of a civil action

18   for damages under the FEHA" Romano v. Rockwell Internat., Inc. 14 Cal.4th 479, 492 (1996).

19   Therefore, Plaintiff must establish that he exhausted the appropriate state administrative remedies

20   in his amended complaint in order to properly state a claim under this provision of California

21   law. Moreover, there is a one year statute of limitations under FEHA which begins to run as of

22   the date of the right to sue letter. Hall v. Goodwill Industries of Southern, Cal. 193 Cal. App. 4th

23   718 (2nd Dist. 2011).

24        *California Labor Code  § 1102.5*

25        Although Plaintiff has not alleged a separate cause of action under the California Labor

26   Code § 1102.5, the complaint makes references that Defendants have violated this provision of

27   law. California Labor Code  § 1102.5 (b) states that an employer cannot retaliate against an

28   employee "for disclosing information to a government or law enforcement agency, where the

1  employee has reasonable cause to believe that the information discloses a violation of state or

2  federal statute [or regulation]." Cal. Labor Code § 1102.5.  Plaintiff is advised that in Campbell

3  v. Regents of the Univ. of Cal., 35 Cal.4th at 317, 329 (2005), the California Supreme Court held

4  that under § 1102.5, a plaintiff is required to exhaust all administrative remedies before

5  proceeding to suit.  Thus, in order to state a claim under this provision of law, Plaintiff must

6  establish that he has exhausted his administrative remedies pursuant to the California Tort

7  Claims Act which is described in more detail below.   He must also establish that he has

8  exhausted the administrative remedies with the Labor Commission pursuant to California Labor

9  Code  § 98.7 which requires that he file a complaint with the Labor Commission within six

10  months after the occurrence of the violation. Cal. Labor Code  § 98.7.  Bowman v. Yolo County,

11  2008 WL 3154691, *1-2 (E.D. Cal. 2008) (exhaustion of administrative remedies pursuant to

12  section 98.7 is required under section 1102.5 in addition the California Tort Claims Act); see also

13  Hall v. Apartment Inv. and Mgmt. Co., 2008 WL 5396361 (N.D. Cal. 2008) (exhaustion of the

14  administrative remedies prescribed in section 98.7 applies to section 1102.5).  Plaintiff shall

15  ensure that any amended complaint demonstrates compliance with these requirements if he is

16  attempting to state this as a cause of action.

17         *Wrongful Termination in Violation of Public Policy*

18         Generally, only an employer may be sued for the tort of a wrongful termination in

19  violation of public policy.  This is true as only the employer owes a duty to the employee and

20  only the employer can discharge an employee.  Weinbaum v. Goldfarb, Whitman & Cohen, 46

21  C.A. 4th 1310, 1315 (1996).  Here, LBUSD is Plaintiff's employer.  As discussed below, it

22  appears that LBUSD is immune from suit under the Eleventh Amendment of the United States

23  Constitution for this cause of action.  See, *Eleventh Amendment Immunity*, supra.

24         *Defamation*

25         Under California Law a claim for defamation  involves a publication of a statement of

26  fact that is false, defamatory, and unprivileged, and that has a natural tendency to injure or that

27  causes special damage.  Taus v. Loftus, 40 Cal. 4th 683,720 (2007) (internal quotations and

28  citation omitted).  Each publication gives rise to a new cause of action for defamation.  Shively v.

1  Bozanich, 31 Cal. 4th 1230, 1243 (2003).  The defamatory statement must be specifically

2  identified, and Plaintiff must plead the substance of the statement.  Jacobson v. Schwarzenegger,

3  357 F.Supp. 2d 1198, 1216 (C.D. Cal. 2004); see also Okun v. Superior Court, 29 Cal.3d 442,

4  458 (1981) (a plaintiff must plead the alleged libelous words).  A publication is "communication

5  to some third person who understands the defamatory meaning of the statement and its

6  application to the person to whom the reference is made."  Smith v. Maldonado, 72 Cal. App.

7  4th 637, 645 (Cal. App. 1 Dist., 1999).

8       *Intentional Infliction of Emotional Distress*

9       Under California law, the elements of intentional infliction of emotional distress are: (1)

10  extreme and outrageous conduct by the defendant with the intention of causing, or reckless

11  disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or

12  extreme emotional distress; and (3) actual and proximate causation of the emotional distress by

13  defendant's outrageous conduct.  Sabow v. United States, 93 F.3d 1445, 1454 (9th Cir. 1996)

14  (citing to Christensen v. Superior Court, 54 Cal.3d 868 (1991)).

15       Plaintiff is advised that the statute of limitations for claims of personal injury which

16  includes wrongful termination in violation of public policy, intentional infliction of emotional

17  distress, and defamation is two years.  See, Mathieu v. Norrell Corp., 115 Cal. App. 4th 1174,

18  1189 n.14 (2nd Dist. 2004); Cal. Civ. Proc. § 335.1.

19       *California Tort Claims Act*

20       Plaintiff is also advised that his tort claims for wrongful termination in violation of public

21  policy,[4] defamation, and intentional infliction of emotional distress against all named defendants

22  may be barred as there is no common law tort liability for public entities in California as such

23  liability is wholly statutory. In re Groundwater Cases, 154 Cal. App. 4th 659, 688 (Cal.App. 1

24  Dist., 2007); Ibarra v. California Coastal Com. 182 Cal.App.3d 687 (1986); see also Brown v.

25  _____

26       [4] Courts have held that compliance with the California Torts Claim Act is required when pursuing a cause
of action for wrongful termination.  Williams v. Housing Authority of the City of Los Angeles, 121 Cal.App. 4th

27  708, 713 n. 2 (2004) (stating that public policy violations premised on wrongful termination, wrongful constructive
termination, and wrongful demotion are all common law tort causes of action); See also, Dalton v. East Bay Mun.

28  Utility Dist., 13 Cal. App. 4th 1566 (1993); Loehr v. Ventura County Community College Dist., 147 Cal. App. 3d
1071 (1983).

1  Poway Unified School Dist. 4 Cal.4th 820, 829 (1993) ("a public entity is not liable for injuries

2  except as provided by statute").   Under the California Tort Claims Act, Government Code

3  section 810, et seq., "[e]xcept as otherwise provided by statute ... [a] public entity is not liable for

4  an injury, whether such injury arises out of an act or omission of the public entity or a public

5  employee or any other person." Gov. Code, § 815 (a).  Therefore, it appears that Plaintiff's tort

6  claims against some or all defendants may be barred and Plaintiff shall evaluate whether to

7  include these causes of action in an amended complaint.

8      Furthermore, if Plaintiff believes his tort claims are not barred, the CTCA requires that a

9  tort claim against a public entity or its employees be presented to the California Victim

10  Compensation and Government Claims Board, formerly known as the State Board of Control, no

11  more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2,

12  945.4, 950-950.2.   Presentation of a written claim, and action on or rejection of the claim are

13  conditions precedent to suit.   State v. Superior Court of Kings County (Bodde), 32 Cal.4th 1234,

14  1245 (2004); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir.1995).   In

15  other words, to state a tort claim against a public entity or public employee, a plaintiff must

16  allege compliance with the Tort Claims Act.   State v. Superior Court of Kings County, 32 Cal.4th

17  at 1245; Mangold  v. California Pub. Utils. Comm'n, 67 F.3d at 1477; Karim-Panahi v. Los

18  Angeles Police Dept., 839 F.2d 621, 627 (9th Cir.1988).  Plaintiff is advised that failure to plead

19  compliance with the CTCA for the state law tort claims in his amended complaint may result in

20  dismissal of those causes of actions.

21      *Breach of Contract*

22      In California, "[a] cause of action for breach of contract requires proof of the following

23  elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance;

24  (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." CDF Firefighters v.

25  Maldonado, 158 Cal.App.4th 1226, 1239 (2008). "[I]n order to form a valid and enforceable

26  contract, it is essential that there be: (1) parties capable of contracting; (2) their consent; (3) a

27  lawful object; and (4) a sufficient consideration." Netbula, LLC v. BindView Dev. Corp., 516

28  F.Supp.2d 1137, 1155 (N.D.Cal.2007) (citing Cal. Civ. Code § 1550).

1      *Breach of Implied Covenant of Good Faith and Fair Dealing*

2      "There is an implied covenant of good faith and fair dealing in every contract that neither

3    party will do anything which will injure the right of the other to receive the benefits of the

4    agreement." Comunale v. Traders & Gen. Ins. Co., 50 Cal.2d 654, 658, 328 P.2d 198 (1958).

5    The implied covenant "rests upon the existence of some specific contractual obligation. [It] is

6    read into contracts in order to protect the express covenants or promises of the contract, not to

7    protect some general public policy interest not directly tied to the contract's purpose." Racine

8    Laramie, Ltd. v. Dept. of Parks & Recreation, 11 Cal.App.4th 1026, 1031 (1992).   Thus, to state

9    a claim for a breach of implied covenant of good faith and fair dealing, a claimant " must show

10   that the conduct of the defendant ... demonstrates a failure or refusal to discharge contractual

11   responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a

12   conscious and deliberate act, which unfairly frustrates the agreed common purposes and

13   disappoints the reasonable expectations of the other party thereby depriving that party of the

14   benefits of the agreement." Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.,

15   90 Cal.App. 4th 335, 346 (2001) (internal quotation marks omitted); Robalo LLC v. Ramey,

16   2012 WL 244340 at *6 (E.D.Cal., 2012).

17         Several of the allegations with regard to a breach of implied covenant of good faith and

18   fair dealing indicate that Plaintiff's employment contract was partly oral and party implied.   It is

19   well settled in California that breach of implied covenant of good faith and fair dealing is a claim

20   arising from the existence of a contract.  Duarte v. Freeland,  2007 WL 2790591 at *10

21   (N.D.Cal., 2007) citing  Foley v. Ineractive Data Corp., 47 Cal.3d 654, 683-84 (1988).  Plaintiff

22   is advised that a public entity cannot be held liable on an implied-in-law or quasi-contract theory.

23   Pasadena Live,  LLC v. City of Pasadena, 114 Cal.App.4th 1089, 1094 (Cal.App. 2 Dist., 2004)

24   (citations omitted).  Moreover,"[i]t is well settled in California that public employment is not

25   held by contract but by statute and that, insofar as the duration of such employment is concerned,

26   no employee has a vested contractual right to continue in employment beyond the time or

27   contrary to the terms and conditions fixed by law."  Duarte v. Freeland,  2007 WL 2790591 *10

28   citing, Shoemaker v. Myers, 52 Cal.3d 1, 23-24 (1990) (concluding that plaintiff had failed to

state a cause of action for breach of contract or breach of the implied covenant of good faith and fair dealing because he was a civil service employee); <u>accord</u> <u>Portman v. County of Santa Clara</u>, 995 F.2d 898, 905 (9th Cir. 1993); <u>see also</u> <u>Summers v. City of Catherdral City</u>, 225 Cal.App.3d 1047, 1065 (1990) (stating that "[t]his rule applies at all levels of government"). Thus, under <u>Shoemaker</u>, <u>Portman</u>, and <u>Summers</u>, public employees such as teachers have no private claims for breach of contract or other derivative state claims based on contract. <u>Duarte v. Freeland,</u> 2008 WL 496490 at *10.

*Eleventh Amendment Immunity*

The Eleventh Amendment of the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." The Eleventh Amendment prohibits federal courts from hearing suits brought against a state by its own citizens or citizens of other states. <u>Brooks v. Sulphur Springs Valley Elec. Coop.</u>, 951 F.2d 1050, 1053 (9th Cir. 1991). "[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a state in federal court." <u>Kentucky v. Graham</u>, 473 U.S. 159, 169 (1985). "Although the exact limits of the Eleventh Amendment are difficult to determine, it is clear that the Eleventh Amendment prohibits actions for damages against state agencies when Congress has failed to express a contrary intent." <u>Belanger v. Madera Unified School Dist.</u>, 963 F.2d 248, 250 (9th Cir. 1992).

In <u>Mitchell v. Los Angeles Community College Dist.</u>, 861 F.2d 198, 201 (9th Cir. 1988), the Ninth Circuit set out a five-factor test to determine whether an agency is a state agency for Eleventh Amendment purposes and has repeatedly held that, because of the funding relationship that exists between California schools and the State of California, public school districts and their subdivisions are, in fact, state agencies for Eleventh Amendment purposes. *See, e.g.,* <u>Id.</u>; <u>Belanger v. Madera School District</u>, 963 F.2d 248, 254-255(9th Cir. 1992); <u>Jackson v. Hayakawa</u>, 682 F.2d 1344, 1350-1351 (9th Cir. 1982) ("trustees are an arm of the state that can claim Eleventh Amendment immunity"). Similarly, in <u>Pennhurst State School & Hospital v.</u>

_Halderman_, 465 U.S. 89 (1984), the Supreme Court held that the Eleventh Amendment bars federal courts from granting injunctive relief against state officials for violations of state law. See also, Ashker v. California Dep't of Corrections, 112 F.3d 392, 394 (9th Cir.1997).   Finally, the Eleventh Amendment also bars suits in federal court against states on the basis of violations of state law.   See Pennhurst State School and Hospital v. Halderman, supra; Cholla Ready Mix Inc. v. Civish, 382 F. 3d 969, 973-974 (9th Cir. 2004); Ashker v. Cal. Dep't of Corr., supra. Eleventh Amendment immunity does not extend to a state officer sued in his individual or personal capacity.   Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003); Price v. Alaska, 928 F. 2d 824, 828 (9th Cir. 1991).

Because LBUSD is a public school district in California, it may be shielded from liability under the Eleventh Amendment.  The Eleventh Amendment does not bar suits against the school district under VII, however, it is a bar for other federal and state law claims.[5]  Plaintiff should also be mindful that claims against state officials may be limited in nature.  Accordingly, he shall examine this issue when determining which federal or state claims he wishes to pursue in any amended complaint.

_Punitive Damages_

Plaintiff has alleged punitive damages.  He is advised, however, that "it is well established that punitive damages my not be assessed against a public entity under Title VII." Jackson v. Board of Equalization, 2011 WL 3814537 at *15 (E.D. Ca. 2011) (citations omitted). Moreover, with regard to the state law claims, punitive damages may be appropriate under California law "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ.Code § 3294.   Malice may be shown where the defendant exhibits "the motive and willingness to vex, harass, annoy, or injure," Nolin v. Nat'l Convenience Stores, Inc., 95 Cal.App.3d 279, 285 (1979) (internal quotation marks omitted), or a "conscious disregard of the rights and safety of others," Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 1000 (1993).  A plaintiff may establish malice "by indirect evidence from which the

---

[5]  Eleventh Amendment immunity has been abrogated by Congress for claims pursuant to Title VII.  See, Cerrato v. San Francisco Community College District, 26 F. 3d 968, 976 (9th Cir. 1994).

jury may draw inferences." <u>Taylor v. Superior Court</u>, 24 Cal.3d 890, 894, 157 Cal.Rptr. 693, 598 P. 2d 854 (1979).  Plaintiff shall properly plead any request for punitive damages if he intends to pursue this remedy in any amended complaint.

*Statute of Limitations*

Plaintiff is advised that most of the alleged unlawful activity took place from 2003 through 2008, and as such he should carefully review the applicable statute of limitations for each cause of action he alleges.  He was officially terminated on September 11,  2008. Therefore, several of his claims may be barred by the statute of limitations.  The Court has provided Plaintiff information regarding the statute of limitations for several of his claims. Plaintiff is strongly encouraged to consult an attorney as the case presents several challenging and complex legal issues.

*Leave to Amend the Complaint*

Plaintiff is given leave to amend *the claims that are addressed herein*.  In doing so, he shall consider the standards set forth in this order and only file an amended complaint if he believes his claim is cognizable. If Plaintiff chooses to file a First Amended Complaint, the document shall bear the docket number assigned in this case and be labeled "First Amended Complaint."  If Plaintiff decides to file an amended complaint, he is reminded that an amended complaint supercedes the original complaint, <u>Forsyth v. Humana, Inc.</u>, 114 F.3d 1467, 1474 (9th Cir. 1997); <u>King v. Atiyeh</u>, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading." Local Rule 220.  Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived."  <u>King v. Atiyeh</u>, 814 F.2d at 567 (citing to <u>London v. Coopers & Lybrand</u>, 644 F.2d 811, 814 (9th Cir. 1981)); <u>accord</u> <u>Forsyth v. Humana, Inc.</u>, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1.      Within **thirty (30) days** from the date of service of this order, Plaintiff must file an amended complaint curing the deficiencies identified by the Court in this order, and

17

2.     **Plaintiff is advised that failure to file an amended complaint within the time specified, will result in dismissal of this action for failure to obey a court order.**

IT IS SO ORDERED.

Dated:   **February 15, 2012**                    _____ /s/ **Gary S. Austin** _____
                                                UNITED STATES MAGISTRATE JUDGE