# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CHARLES ULMSCHNEIDER, | ) | 1:11-cv-1767 AWI GSA |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER DISMISSING CASE WITH LEAVE |
| v. | ) | TO FILE A SECOND AMENDED |
| | ) | COMPLAINT |
| LOS BANOS UNIFIED SCHOOL DISTRICT; LOS BANOS TEACHERS' ASSOCIATION; DAN MARTIN; DUKE MARSHALL; DR. CHARLES MARTIN; CHERYL MOODY; ANTHONY PARREIRA; JAMES ORR; SHANNA SPIVA; STEVE TIETJEN; AARON BARCELLOS; COLLEEN MENEFE DENNIS AREIAS; DAN GOIN; ANDREE SOARES; CAROLE WYNNE, RANDY NOCITO; PAUL ALDERETE, and DOES through 50. | ) ) ) ) ) ) ) ) ) ) ) | (Doc. 1) |
| Defendants. | ) | |

## INTRODUCTION

Plaintiff Charles Ulmschneider ("Plaintiff"), appearing pro se and proceeding in forma pauperis, filed the instant first amended complaint alleging employment discrimination. (Doc. 9). Plaintiff is challenging his termination as a teacher from Los Banos Unified School District ("LBUSD"). He names LBUSD; the Los Banos Teachers' Association ("LBTA"); Paul Alderete, a Superintendent at LBUSD,[1] Dan Martin, the principal at Los Banos High School ("LBHS");

---

[1] Mr. Aderete was not named as a defendant in Plaintiff's initial complaint.

1

Duke Marshall, the Dean of LBHS; Charles Martin, the Assistant Superintendent of LBHS; Cheryl Moody the President of the LBTA; Anthony Parreira, the Vice President of the LBTA; James Orr, a member of the LBTA; Shanna Spiva, the Personnel Director of LBUSD; Dr. Steven Tietjen, the Superintendent of LBUSD; Aaron Barcellos the President of the LBUSD school board; Carole Wynne, a teacher and Chair of the LBUSD Foreign Language Department; Randy Nocito, a teacher and member of the Peer Assistance Review ("PAR") at LBHS; and Colleen Menefee, Dennis Areias, Don Goin, all members of the LBUSD School Board (collectively, "Defendants"). The Court has screened the complaint, and upon review of the first amended pleading recommends that the case be dismissed with leave to amend.

## DISCUSSION

A. <u>Screening Standard</u>

Pursuant to 28 U.S.C. § 1915(e)(2), the court must conduct an initial review of the complaint for sufficiency to state a claim. The court must dismiss a complaint or portion thereof if the court determines that the action is legally "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). If the court determines that the complaint fails to state a claim, leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 129 S.Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. <u>Id</u>. at 1949.

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in

support of the claim or claims that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In reviewing a complaint under this standard, the Court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Trustees of Rex Hospital, 425 U.S. 738, 740 (1976), construe the pro se pleadings liberally in the light most favorable to the plaintiff, Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000), and resolve all doubts in the Plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

B.  Plaintiff's Allegations

Plaintiff began working at LBHS as a foreign language teacher in July 1999. He contends that he has excellent educational and teaching credentials and he received tenure in April 2001. (Doc. 9, at Exhibit A). However, he also had a history of speaking out against racial, language, cultural, and civil rights discrimination at LBHS. Specifically, Plaintiff alleges that his half-Hispanic daughter was discriminated against by the district when she was not allowed to attend LBHS and that he had to be insistent that she receive equal treatment on sports teams and in the band.[2] Id. at Exhibit B.

Plaintiff alleges that because he was outspoken about the discriminatory practices at the school, he was placed into a mandatory PAR program in 2003-2004.[3] Id. at Exhibits F & G. The PAR program is designed for teachers who need assistance in improving various aspects of their teaching. The assigned teacher works with a consulting teacher who offers supervision to promote professional development and improve job performance. Plaintiff alleges he was the only teacher in the entire district who had been placed in the PAR program after five years of its

---

[2] Although Plaintiff alleges that his daughter was not initially permitted to attend LBHS, it appears that she did ultimately attend this school. Moreover, the complaint references the fact that the board changed its policy regarding this issue. (Doc. 9, at pg. 7).

[3] Although Plaintiff's complaint alleges he was placed on PAR because he was complaining of discriminatory practices, the exhibits attached to the pleading indicate that his formal complaints regarding discriminatory practices and teacher's credentials occurred in October 2004 or later, which is *after* he was placed on PAR in the 2003-2004 academic year. Id. at Exhibit L (noting that the 2007-2008 school year was the *fifth* consecutive year Plaintiff was placed on PAR).

existence.

After being placed on the PAR, Plaintiff filed three complaints against LBUSD and LBTA. The first was a complaint filed in October 2004, with the Office for Civil Rights ("OCR") at the United States Department of Education. Id. at Exhibit C. This complaint raised issues about segregation and the lack of inclusion of Hispanic and other minority students in the school. Id. The second complaint was filed in October 2004, with the Public Employment Relations Board ("PERB") against the LBTA. Id. at Exhibit D. This complaint alleged that Plaintiff was required to attend the PAR for unfounded, baseless, and retaliatory reasons. Id. There were also two complaints filed in October 2004 and November 2004, with the California Department of Education. Id. at Exhibits E and F. Plaintiff filed these complaints contending that teachers were teaching classes outside of their credentialed areas and that students were having difficulty understanding school announcements due to language difficulties.[4] Moreover, in November 2004, Plaintiff was injured on the job and he filed a Worker's Compensation Case. As a result of this injury, he missed work once a week during the afternoons which he argues also served as a basis for the retaliation

Plaintiff alleges that he was harassed over the next several years by the superintendent, teachers and members of LBTA. For example, he believes he was unjustly required to be on PAR for the remainder of the time he was employed in the district. Id. at Exhibit L. Moreover, he contends that none of the supervising teachers that he worked with in PAR spoke Spanish or had teaching credentials in foreign languages which was Plaintiff's areas of expertise.[5] Plaintiff alleges he complained to the union several times regarding this issue but the union refused to process his grievances. In addition to being placed in PAR, Plaintiff contends he received several formal letters of reprimand in front of other teachers, and he received biased and unsubstantiated performance evaluations. Id. at Exhibits H, J, K, L.

---

[4] Although not outlined in the instant complaint, Plaintiff also attached a complaint he filed with the California Department of Fair Employment and Housing dated December 14, 2006. (Doc. 9, Exhibit I).

[5] Plaintiff has two degrees and two teaching credentials in Spanish and German.

4

Although the exact timing is unclear, Plaintiff alleges that the district began administrative proceedings to terminate Plaintiff's employment. By early 2007, Plaintiff contends that the teachers union refused to negotiate on his behalf. The superintendent offered him $106,000.00 to leave, however, Plaintiff refused the offer. He was suspended without pay on January 1, 2008.

Plaintiff had a dismissal hearing in July 2008 which he alleges was unfair and biased against him. Plaintiff was officially terminated on September 11, 2008. Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in February 2009. The EEOC issued a right to sue letter on July 28, 2011. (Doc. 9, Exhibit M). Plaintiff filed the instant action in this court on October 24, 2011. The Court dismissed Plaintiff's first complaint with leave to amend on February 16, 2012. Plaintiff subsequently filed the instant amended complaint.

As a result of Defendants' conduct, Plaintiff alleges he suffered lost wages, humiliation, emotional distress, mental and physical pain, and anguish. He has alleged retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e -3 et seq ("Title VII"), creation of hostile work environment under Title VII, as well as state law claims for breach of contract, intentional infliction of emotional distress, and defamation of character.[6] Plaintiff seeks general, special, incidental, consequential and punitive damages, prejudgment interest, a complete resetting of his "employment clock" to 2003 before "all this began," and reinstatement of his position at LBHS. (Doc. 9, Pg. 30).

C. <u>Analysis</u>

A review of Plaintiff's amended complaint reveals he failed to correct many of the deficiencies outlined in this Court's first screening order. However, the Court will allow Plaintiff one final opportunity to amend the complaint because he has added new claims in the amended complaint. In particular, Plaintiff has listed causes of action under 42 U.S.C. §§ 1981, 1983, and

---

[6] It appears Plaintiff is also attempting to add additional claims which will be addressed in subsequent sections of this order.

5

1985, as well as 28 U.S.C. §§ 1658 and 1343 in the heading of the pleading.  He also lists these alleged violations of law in the title of the other causes of action pled.  However, these are not separate causes of action in the complaint, and it is not clear whether Plaintiff intends to pursue these claims.  Accordingly, the Court will provide Plaintiff with the legal standards for those causes of action.  Plaintiff is again advised that *the causes of action must be more clearly organized so that there is one cause of action for each alleged violation of law.*  For example, the instant complaint alleges violations under Title VII, 42 U.S.C. §§ 1981 and 1983, as well as 28 U.S.C. §§ 1658 for the first cause of action.  This is improper.  Moreover, any amended complaint must clearly identify *which defendant is named under each cause of action*.  In order for the Court to properly screen Plaintiff's complaint, it must be clear which defendants are alleged to have committed each specific violation.  Finally, any amended complaint must contain all necessary allegations for each cause of action and defendant's actions must be linked to the specific violation of law alleged.  Mere speculation regarding a defendant's behavior or making legal conclusions is not sufficient to state a claim.

Plaintiff is forewarned that the Court has reviewed the causes of action in the amended complaint and is inclined to recommend dismissal of all of those causes of action for the reasons set forth herein.  However, the Court is granting Plaintiff leave to amend the pleading to allow him one final opportunity to develop the new federal claims alleged in the amended complaint.  If Plaintiff is unable to state a cognizable federal claim, this Court will not have jurisdiction to hear the other state law claims. Thus, any second amended complaint must contain a cognizable federal claim.

   1.   *Applicable Legal Standards*

In the paragraphs that follow, the court will provide Plaintiff with the legal standards that may apply to his claims. *Plaintiff should carefully review the standards and amend only those claims that he believes in good faith are cognizable.*

Preliminarily, Federal Rule of Civil Procedure 8(a) states, a complaint must contain "a short and plain statement of the claim." Fed. R. Civ. P. 8(a).  The rule expresses the

principle of notice-pleading, whereby the pleader need only give the opposing party fair notice of a claim. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Rule 8(a) does not require an elaborate recitation of every fact a plaintiff may ultimately rely upon at trial, but only a statement sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. at 47.

### a. Title VII Claims

*Disparate Treatment*

42 U.S.C. § 2000e-2(b) provides that it shall be an unlawful employment practice for an employer to fail to refuse, or otherwise discriminate against, any individual because of his race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2. To establish a prima facie case of disparate treatment under Title VII Plaintiff must show that: "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." Peterson v. Hewlett-Packard Co., 358 F.3d 599, 603 (9th Cir. 2004); see also Raad v. Fairbanks North Star Borough School Dist., 323 F.3d 1185, 1195-96 (9th Cir. 2003) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Since Plaintiff has not alleged that he is a member of one of the protected classes, Plaintiff's amended complaint does not state a cause of action under this section.

*Hostile Work Environment*

To establish a prima facie case for a hostile-work environment claim, Plaintiff must establish that: (1) the defendants subjected the plaintiff to verbal or physical conduct based on his race [or one of the other protected classes]; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and created an abusive working environment. Surrell v. California Water Service Co., 518 F. 3d 1097, 1108 (9th Cir. 2008) citing Manatt v. Bank of America, NA, 339 F.3d 792, 798 (9th Cir. 2003).

As noted above, Plaintiff's amended complaint does not state a cause of action under this section because he was not subjected to Defendant's conduct because of *his* race or any one of

7

the other protected classes.

*Retaliation*

Title VII also states that:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made *an unlawful employment practice* by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing *under this subchapter*.
42 U.S.C. 2000e-3(a).

Thus, an employee may prevail on a Title VII retaliation claim if the employee can show that he or she opposed an unlawful employment practice under Title VII, that he or she was the object of an adverse employment action, and that the adverse action was caused by his or her opposition to an unlawful employment action. In other words, "[t]itle VII prohibits retaliation only against individuals who oppose discriminatory employment practices or participate in complaints or investigations *of employment practices* prohibited by title VII." See, Lowrey v. Texas A & M University System 117 F.3d 242, 249 (5th Cir. 1997) ("By its plain language therefore, Title VII does not prohibit retaliation against complainants who challenge [the availability of sports programming and opportunities because of one's sex,] as such complaints are wholly unrelated to the discriminatory employment practices proscribed by title VII"). "The mere fact that an employee is participating in an investigation or proceeding involving charges of some sort of discrimination, however, does not trigger the [retaliation protections under Title VII]; the underlying discrimination must be reasonably perceived as discrimination under Title VII." Learned v. City of Bellevue, 860 F. 2d 928, 932 (9th Cir. 1988). The opposed conduct must fall within the protection of Title VII to sustain a claim of unlawful retaliation. Silver v. KCA, Inc., 586 F. 2d 138, 141-142 (9th Cir. 1978) (stressing the necessity that any complaints based on Title VII must relate to an *unlawful employment practice*).

Here, it is clear that Plaintiff's allegation that he was terminated from his employment is an adverse employment action and he filed a complaint with the EEOC. However, the reason

that he was allegedly retaliated against was not because he himself is a member of the protected class, or that he filed a complaint alleging an unlawful employment action based on one of the protected classes. Instead, the alleged retaliation and harassment was the result of : 1) complaints he filed that the school district was engaging in racially discriminatory educational practices against Hispanic students, and 2) that the school district was out of compliance regarding teacher credentialing. Thus, Plaintiff's amended complaint has not stated a claim under Title VII, the purpose of which is to prohibit *unlawful employment practices* and/or to protect individuals who report *unlawful employment practices* based on race, color, religion, sex, or national origin.

      **b.    Civil Rights claims**

      *The Section 1983 Claim*

The Civil Rights Act provides as follows:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress. 42 U.S.C. § 1983...

The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Plaintiff is advised that <u>to state a claim for relief under section 1983, plaintiff must link a named defendant with some affirmative act or omission that demonstrates a violation of plaintiff's federal rights</u>. Moreover, in order to state a section 1983 claim, Plaintiff must identify a constitutional violation, or a violation of a federal statute *that creates an individually enforceable right in the class of beneficiaries to which he belongs* that serves as the basis of the claim. City Of Rancho Palos Verdes, Cal., v. Abrams, 544 U.S. 113, 120 (2005). In other words, Plaintiff can not just allege a general violation of 42 U.S.C. § 1983, as he has done in the First Amended

Complaint. There must be a basis for the Section 1983 violation.

*Respondeat Superior for 1983 claims*

"Although there is no pure *respondeat superior* liability under § 1983, a supervisor [may be held] liable for the constitutional violations of subordinates 'if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.'" Hydrick v. Hunter, 500 F.3d at 988 (quoting Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)). To the extent that Plaintiff intends to bring claims against any school officials based on their supervisory roles, he must provide specific information that the supervisor participated in the violations, or knew of the violations but did nothing to prevent them.

*The Section 1981 Claim*

42 U.S.C. § 1981 generally provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> For purposes of this section, the term "make and enforce contracts" includes the making performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.[7]

42 U.S.C. § 1981(a) & (b).

Plaintiff is advised that the legal principles guiding a court in a Title VII dispute apply with equal force in a § 1981 action. See, Manatt v. Bank of America, NA , 339 F.3d at 797 -798 (9th Cir. 2003); EEOC v. Inland Marine Indus., 729 F.2d 1229, 1233 n. 7 (9th Cir.1984) ("A plaintiff must meet the same standards in proving a § 1981 claim that he must meet in establishing a ... claim under Title VII ...."); see also Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir.2000) (analogizing a § 1981 claim to a Title VII claim); Danco, Inc. v. Wal Mart Stores, Inc., 178 F.3d 8, 13 (1st Cir.1999) (noting that the language in § 1981(b) "tracks language of Title VII prohibiting discrimination with respect to 'compensation, terms,

---

[7] The statute of limitations for a Section 1981 retaliation claim is subject to the four year statute of limitations in 18 U.S.C. § 1658. Johnson v. Lucent Technologies, 653 F. 3d 1000, 1008 (9th Cir. 2011). Plaintiff is advised that the determination of the statute of limitations period for claims brought under Section 1981 based on other types of claims involves a complex analysis.

conditions, or privileges of employment' "); Jurado v. Eleven-Fifty Corp., 813 F.2d 1406, 1412 (9th Cir.1987). Thus, it appears that Plaintiff cannot state a claim under § 1981 because similar to his Title VII claims, he is not alleging he is a member of a protected class or that he suffered adverse employment actions based on *his* race.

*The Section 1985 Claim*

A claim brought for violation of section 1985(3) requires "four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992) (citation omitted). A racial, or perhaps otherwise class-based, invidiously discriminatory animus is an indispensable element of a section 1985(3) claim. Sprewell v. Golden State Warriors, 266 F.3d 979, 989 (9th Cir. 2001) (quotations and citation omitted). Restraint must be exercised in extending section 1985(3) beyond racial prejudice. Butler v. Elle, 281 F.3d 1014, 1028 (9th Cir. 2002) (citation omitted). A claim for violation of section 1985(3) requires the existence of a conspiracy and an act in furtherance of the conspiracy. Holgate v. Baldwin, 425 F.3d 671, 676 (9th Cir. 2005) (citing Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992)). A mere allegation of conspiracy is insufficient to state a claim. Id. at 676-77.

Moreover, the Ninth circuit ruled that in order to state a claim under § 1985(3) "*the plaintiff* must be a member of a class that requires special federal assistance in protecting its civil rights." McCalden v. California Library Ass'n, 955 F. 2d 1214,1223 (9th Cir. 1990); Gerritsen v. de la Madrid Hurtado, 819 F.2d 1511, 1519 (9th Cir.1987) (finding that Plaintiff did not state a cause of action under section 1985(3) because he had not alleged any class-based discrimination against him).

This section does not appear to relate to Plaintiff's claims as *he, himself*, is not a member of a class that requires special federal assistance in protecting civil rights, nor has he demonstrated racial animus against him. Plaintiff is further advised that 28 U.S.C. § 1343 which

he cited in the Amended Complaint only confers jurisdiction on federal courts to hear these claims. It is not a statute that can be cited to establish a cause of action.

*Statute of Limitations for Civil Rights Claims*

Federal civil rights statutes have no independent limitations period. Johnson v. State of California, 207 F.3d 650, 653 (9th Cir. 2000); Taylor v. Regents of the Univ. of Cal., 993 F.2d 710, 711 (9th Cir. 1993) (California's statute of limitations for personal injury actions governs claims brought pursuant to §§ 1983 and 1985); Abreu v. Ramirez, 284 F.Supp.2d 1250, 1257 (C.D. Cal. 2003). The applicable limitations period is determined by borrowing the forum state's limitations period for personal injuries. Johnson, 207 F.3d at 653; Abreu, 284 F.Supp.2d at 1257. Section 1983 and related federal civil rights claims "are best characterized as personal injury actions." Wilson v. Garcia, 471 U.S. 261, 280 (1985).

Pursuant to Wilson, the Ninth Circuit held that the appropriate statute of limitations for section 1983 and section 1985 claims brought in California is the limitation set forth in California Code of Civil Procedure section 340(3). See Usher v. City of Los Angeles, 828 F.2d 556, 558 (9th Cir.1987) (deciding § 340(3) applies to claims brought pursuant to 42 U.S.C. § 1983); McDougal v. County of Imperial, 942 F.2d 668, 674 (9th Cir.1991) (deciding that § 340(3) applies to claims brought pursuant to 42 U.S.C. 1985(3)); Taylor v. Regents of Univ. of California, 993 F.2d at 711-12 (holding that § 340(3) applies to claims brought pursuant to 42 U.S.C. § 1985). On January 1, 2003, section 340(3) was replaced with California Code of Civil Procedure section 335.1[8], which lengthened the limitations period for personal injury claims to two years. Although state law provides the statute of limitations for claims under sections 1983 and 1985, federal law determines when a civil rights claim accrues. Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001). "Under federal law, 'a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.' " Id., quoting Two Rivers v. Lewis, 174 F.3d 987, 992 (9th Cir.1999). Therefore, the statute of limitations for Section 1981, 1983 and 1985 claims is two years. Plaintiff is advised that 28 U.S.C. § 1658, which is referenced in the

---

[8]California Code of Civil Procedure provides: "Within two years: An action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another."

amended complaint does not apply to Section 1983 and 1985 actions. McDougal v. County of Imperial, 942 F.2d at 672-674.

*Federal Court Jurisdiction*

Plaintiff is advised that if he is unable to state a federal claim, this Court will recommend that the matter be dismissed. Federal courts can adjudicate only those cases in which the United States Constitution and Congress authorize them to adjudicate which are essentially those cases involving diversity of citizenship (in which the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states), or a federal question, or to which the United States is a party. 28 U.S.C. §§ 1331 and 1332; See also, Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375 (1994); Finley v. United States, 490 U.S. 545, 109 S.Ct. 2003, 2008 (1989). Here, since all of the parties are residents of California and the United States is not a party, the Court's jurisdiction is proper only if Plaintiff is able to state a claim under federal law. If Plaintiff presents a cognizable federal claim, the Court may exercise supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367. However, if Plaintiff is only able to allege cognizable state law claims, jurisdiction in this Court is not proper. Plaintiff's first amended complaint did not state any cognizable federal claims. Any second amended complaint must do so. Plaintiff is also advised that the state law claims alleged in the amended complaint are problematic for the reasons set for below.

**c. State Law Claims**

*Defamation*

Under California law a claim for defamation involves a publication of a statement of fact that is false, defamatory, and unprivileged, and that has a natural tendency to injure or that causes special damage. Taus v. Loftus, 40 Cal. 4th 683,720 (2007) (internal quotations and citation omitted). Each publication gives rise to a new cause of action for defamation. Shively v. Bozanich, 31 Cal. 4th 1230, 1243 (2003). The defamatory statement must be specifically identified, and Plaintiff must plead the substance of the statement. Jacobson v. Schwarzenegger, 357 F.Supp. 2d 1198, 1216 (C.D. Cal. 2004); see also Okun v. Superior Court, 29 Cal.3d 442, 458 (1981) (a plaintiff must plead the alleged libelous words). A publication is "communication

to some third person who understands the defamatory meaning of the statement and its application to the person to whom the reference is made." Smith v. Maldonado, 72 Cal. App. 4th 637, 645 (Cal. App. 1 Dist., 1999).

The amended complaint alleges that Plaintiff "believes" prospective employers called Defendants for references and that they Defendants made derogatory comments about Plaintiff. Plaintiff asserts this is the reason he has not been hired by almost two hundred school districts. (Doc. 9. at pgs. 28-29). Plaintiff is advised that this is speculation which is not sufficient to state a claim under this cause of action.

*Intentional Infliction of Emotional Distress*

Under California law, the elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by defendant's outrageous conduct. Sabow v. United States, 93 F.3d 1445, 1454 (9th Cir. 1996) (citing to Christensen v. Superior Court, 54 Cal.3d 868 (1991)).

*Statute of Limitations for State Law Claims*

Plaintiff was previously advised that the statute of limitations for claims of personal injury which includes intentional infliction of emotional distress, and defamation is two years. See, Mathieu v. Norrell Corp., 115 Cal. App. 4th 1174, 1189 n.14 (2nd Dist. 2004); Cal. Civ. Proc. § 335.1.

*California Tort Claims Act*

Plaintiff was also previously informed that his tort claims for defamation, and intentional infliction of emotional distress against all named defendants may be barred as there is no common law tort liability for public entities in California because such liability is wholly statutory. In re Groundwater Cases, 154 Cal. App. 4th 659, 688 (Cal.App. 1 Dist., 2007); Ibarra v. California Coastal Com. 182 Cal.App.3d 687 (1986); see also Brown v. Poway Unified School Dist. 4 Cal.4th 820, 829 (1993) ("a public entity is not liable for injuries except as provided by statute"). Under the California Tort Claims Act, Government Code section 810, et seq.,

14

"[e]xcept as otherwise provided by statute ... [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Gov. Code, § 815 (a). Therefore, it appears that Plaintiff's tort claims against some or all defendants may be barred and Plaintiff shall evaluate whether to include these causes of action in an amended complaint.

Finally, Plaintiff was also cautioned that the CTCA requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2. Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. State v. Superior Court of Kings County (Bodde), 32 Cal.4th 1234, 1245 (2004); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir.1995). In other words, to state a tort claim against a public entity or public employee, a plaintiff must allege compliance with the Tort Claims Act. State v. Superior Court of Kings County, 32 Cal.4th at 1245; Mangold v. California Pub. Utils. Comm'n, 67 F.3d at 1477; Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir.1988). Plaintiff failed to plead compliance with the CTCA for the state law tort claims in the amended complaint. As such, he has not stated cognizable causes of actions for these claims and the Court will recommend dismissal if these deficiencies are not corrected.

*Breach of Contract*

In California, "[a] cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." CDF Firefighters v. Maldonado, 158 Cal.App.4th 1226, 1239 (2008). "[I]n order to form a valid and enforceable contract, it is essential that there be: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient consideration." Netbula, LLC v. BindView Dev. Corp., 516 F.Supp.2d 1137, 1155 (N.D.Cal.2007) (citing Cal. Civ. Code § 1550).

Several of the allegations with regard to a breach of contract indicate that Plaintiff's

employment contract was partly oral and party implied.  Moreover, the contract terms that he alleges were breached by Defendants are not clear from the complaint.  Plaintiff is advised that a public entity cannot be held liable on an implied-in-law or quasi-contract theory.  Pasadena Live, LLC v. City of Pasadena, 114 Cal.App.4th 1089, 1094 (Cal.App. 2 Dist., 2004) (citations omitted).  Moreover,"[i]t is well settled in California that public employment is not held by contract but by statute and that, insofar as the duration of such employment is concerned, no employee has a vested contractual right to continue in employment beyond the time or contrary to the terms and conditions fixed by law."  Shoemaker v. Myers, 52 Cal.3d 1, 23-24 (1990) (concluding that plaintiff had failed to state a cause of action for breach of contract or breach of the implied covenant of good faith and fair dealing because he was a civil service employee); accord Portman v. County of Santa Clara, 995 F.2d 898, 905 (9th Cir. 1993)("Under California law, the terms public employment are governed entirely by statute, not by contract, and here as a matter of law, there can be no express or implied-in-fact contract between plaintiff and [the County] which restricts the manner and reasons for termination of his employment); see also Summers v. City of Catherdral City, 225 Cal.App.3d 1047, 1065 (1990) (stating that "[t]his rule applies at all levels of government"). Thus, "under Shoemaker, Portman, and Summers, public employees such as teachers have no private claims for breach of contract or other derivative state claims based on contract." Duarte v. Freeland, 2008 WL 496490 at *10 (N.D. Calif., Feb, 21, 2008).  Plaintiff shall consider this standard in filing a second amended complaint.

*Eleventh Amendment Immunity*

The Eleventh Amendment of the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State."  The Eleventh Amendment prohibits federal courts from hearing suits brought against a state by its own citizens or citizens of other states.  Brooks v. Sulphur Springs Valley Elec. Coop., 951 F.2d 1050, 1053 (9th Cir. 1991).  "[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a state in federal court."  Kentucky v. Graham, 473 U.S. 159, 169 (1985).  "Although the

exact limits of the Eleventh Amendment are difficult to determine, it is clear that the Eleventh Amendment prohibits actions for damages against state agencies when Congress has failed to express a contrary intent." Belanger v. Madera Unified School Dist., 963 F.2d 248, 250 (9th Cir. 1992).

In Mitchell v. Los Angeles Community College Dist., 861 F.2d 198, 201 (9th Cir. 1988), the Ninth Circuit set out a five-factor test to determine whether an agency is a state agency for Eleventh Amendment purposes and has repeatedly held that, because of the funding relationship that exists between California schools and the State of California, public school districts and their subdivisions are, in fact, state agencies for Eleventh Amendment purposes. *See*, e.g., Id.; Belanger v. Madera School District, 963 F.2d 248, 254-255(9th Cir. 1992); Jackson v. Hayakawa, 682 F.2d 1344, 1350-1351 (9th Cir. 1982) ("trustees are an arm of the state that can claim Eleventh Amendment immunity"). Similarly, in Pennhurst State School & Hospital v. Halderman, 465 U.S. 89 (1984), the Supreme Court held that the Eleventh Amendment bars federal courts from granting injunctive relief against state officials for violations of state law. See also, Ashker v. California Dep't of Corrections, 112 F.3d 392, 394 (9th Cir.1997). Finally, the Eleventh Amendment also bars suits in federal court against states on the basis of violations of state law. See Pennhurst State School and Hospital v. Halderman, supra; Cholla Ready Mix Inc. v. Civish, 382 F. 3d 969, 973-974 (9th Cir. 2004); Ashker v. Cal. Dep't of Corr., supra. Eleventh Amendment immunity does not extend to a state officer sued in his individual or personal capacity. Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003); Price v. Alaska, 928 F. 2d 824, 828 (9th Cir. 1991).

Because LBUSD is a public school district in California, it is shielded from liability under the Eleventh Amendment. The Eleventh Amendment does not bar suits against the school district under Title VII, however, it is a bar for other federal and state law claims.[9] Accordingly, Plaintiff shall examine this issue when determining which federal or state claims he wishes to pursue in any amended complaint. In particular, Plaintiff is advised that if any school official or

---

[9] Eleventh Amendment immunity has been abrogated by Congress for claims pursuant to Title VII. See, Cerrato v. San Francisco Community College District, 26 F. 3d 968, 976 (9th Cir. 1994).

employee is named in the second amended complaint, it must be clear that the defendant is being sued in his or her individual capacity.

*Punitive Damages*

Plaintiff has alleged punitive damages. He is advised, however, that "it is well established that punitive damages my not be assessed against a public entity under Title VII." Jackson v. Board of Equalization, 2011 WL 3814537 at *15 (E.D. Ca. 2011) (citations omitted). Moreover, with regard to the state law claims, punitive damages may be appropriate under California law "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ.Code § 3294. Malice may be shown where the defendant exhibits "the motive and willingness to vex, harass, annoy, or injure," Nolin v. Nat'l Convenience Stores, Inc., 95 Cal.App.3d 279, 285 (1979) (internal quotation marks omitted), or a "conscious disregard of the rights and safety of others," Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 1000 (1993). A plaintiff may establish malice "by indirect evidence from which the jury may draw inferences." Taylor v. Superior Court, 24 Cal.3d 890, 894, 157 Cal.Rptr. 693, 598 P. 2d 854 (1979). Plaintiff shall properly plead any request for punitive damages if he intends to pursue this remedy in any second amended complaint.

*Statute of Limitations*

Plaintiff is advised that most of the alleged unlawful activity took place from 2003 through 2008 which is many years ago. He was officially terminated on September 11, 2008. Plaintiff did not file this case until October 24, 2011. (Doc.1). Therefore, several of his claims may be barred by the statute of limitations as noted in this order. The Court previously provided Plaintiff information regarding the statute of limitations for several of his claims. Plaintiff is *once again*, *strongly* encouraged to consult an attorney as this case presents several challenging and complex legal issues.

*Leave to Amend the Complaint*

Plaintiff is given leave to amend *the claims that are addressed herein*. In doing so, he shall consider the standards set forth in this order and only file an amended complaint if he

believes his claim is cognizable. If Plaintiff chooses to file a Second Amended Complaint, the document shall bear the docket number assigned in this case and be labeled "Second Amended Complaint." If Plaintiff decides to file an amended complaint, he is reminded that an amended complaint supercedes the original complaint, <u>Lacey v. Maricopa County</u>, _ F 3d. _, _, Nos, 09-15806, 09-15703, 2012 WL 3711591, at *1, n.1 (9th Cir. Aug., 29, 2012)(en banc), and it must be complete in itself without reference to the prior or superceded pleading. Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. Within **thirty (30) days** from the date of service of this order, Plaintiff must file a second amended complaint curing the deficiencies identified by the Court in this order, and

2. **Plaintiff is advised that failure to file a Second Amended Complaint within the time specified, will result in dismissal of this action for failure to obey a court order.**

IT IS SO ORDERED.

**Dated:   October 5, 2012**                        **/s/ Gary S. Austin**
                                          UNITED STATES MAGISTRATE JUDGE