# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES ULMSCHNEIDER,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>LOS BANOS UNIFIED SCHOOL DISTRICT; LOS BANOS TEACHERS' ASSOCIATION; DAN MARTIN; DUKE MARSHALL; DR. CHARLES MARTIN; CHERYL MOODY; ANTHONY PARREIRA; JAMES ORR; SHANNA SPIVA; STEVE TIETJEN; AARON BARCELLOS; COLLEEN MENEFE DENNIS AREIAS; DAN GOIN; ANDREE SOARES; CAROLE WYNNE, RANDY NOCITO; PAUL ALDERETE, and DOES through 50.<br>　　　　　Defendants. | 1:11-cv-1767 AWI GSA<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS SECOND AMENDED COMPLAINT WITHOUT LEAVE TO AMEND<br><br>(Doc. 15) |

## INTRODUCTION

Plaintiff Charles Ulmschneider ("Plaintiff"), appearing pro se and proceeding in forma pauperis, filed the instant second amended complaint ("SAC") alleging employment discrimination. Doc. 15. Plaintiff is challenging his termination as a teacher from Los Banos Unified School District ("LBUSD"). He names LBUSD; the Los Banos Teachers' Association ("LBTA"); Paul Alderete, a Superintendent at LBUSD,[1] Dan Martin, the principal at Los Banos

---

[1] Mr. Aderete was not named as a defendant in Plaintiff's initial complaint.

1  High School ("LBHS"); Duke Marshall, the Dean of LBHS; Charles Martin, the Assistant
2  Superintendent of LBHS; Cheryl Moody the President of the LBTA; Anthony Parreira, the Vice
3  President of the LBTA; James Orr, a member of the LBTA; Shanna Spiva, the Personnel
4  Director of LBUSD; Dr. Steven Tietjen, the Superintendent of LBUSD; Aaron Barcellos the
5  President of the LBUSD school board; Carole Wynne, a teacher and Chair of the LBUSD
6  Foreign Language Department; Randy Nocito, a teacher and member of the Peer Assistance
7  Review ("PAR") at LBHS; Paul Alderete, a former Superintendent at LBUSD, and Colleen
8  Menefee, Dennis Areias, Don Goin, all members of the LBUSD School Board (collectively,
9  "Defendants").
10  The Court previously screened two of Plaintiff's complaints and provided legal standards
11  and instructions.  Plaintiff was given leave to amend a second time resulting in the filing of this
12  SAC.  Upon a review of SAC, the Court recommends that this case be dismissed without leave to
13  amend.

## DISCUSSION

15  A.    Screening Standard
16  Pursuant to 28 U.S.C. § 1915(e)(2), the court must conduct an initial review of the
17  complaint for sufficiency to state a claim.  The court must dismiss a complaint or portion thereof
18  if the court determines that the action is legally "frivolous or malicious," fails to state a claim
19  upon which relief may be granted, or seeks monetary relief from a defendant who is immune
20  from such relief.  28 U.S.C. § 1915(e)(2).  If the court determines that the complaint fails to state
21  a claim, leave to amend may be granted to the extent that the deficiencies of the complaint can be
22  cured by amendment.
23  A complaint must contain "a short and plain statement of the claim showing that the
24  pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not
25  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere
26  conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing
27  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)).  Plaintiff
28  must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its

face.'" Ashcroft v. Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  Id. at 1949.

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In reviewing a complaint under this standard, the Court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Trustees of Rex Hospital, 425 U.S. 738, 740 (1976), construe the pro se pleadings liberally in the light most favorable to the plaintiff, Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000), and resolve all doubts in the Plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

B.   Plaintiff's Allegations

The SAC is very similar to the other complaints Plaintiff has filed.  Plaintiff began working at LBHS as a foreign language teacher in July 1999.  He contends that he has excellent educational and teaching credentials and he received tenure in April 2001.  Doc. 15, at Exhibit A.  However, he also had a history of speaking out against racial, language, cultural, and civil rights discrimination at LBHS.

Plaintiff alleges that because he was outspoken about the discriminatory practices at the school, he was placed into a mandatory PAR program in 2003-2004.[2]  Id. at Exhibits C, E, F, G, L. The PAR program is designed for teachers who need assistance in improving various aspects of their teaching.  The assigned teacher works with a consulting teacher who offers supervision to promote professional development and improve job performance.  Plaintiff alleges he was the only teacher in the entire district who had been placed in the PAR program after five years of its

---

[2] Plaintiff's complaint alleges he was placed on PAR because he was complaining of discriminatory practices, however, the exhibits attached to the pleading indicate that his formal complaints regarding discriminatory practices and teacher's credentials occurred in October 2004 or later, which is *after* he was placed on PAR in the 2003-2004 academic year.  Id. at Exhibit L (noting that the 2007-2008 school year would have been the *fifth* consecutive year Plaintiff was placed on PAR).

3

existence.

After being placed on the PAR, Plaintiff filed three complaints against LBUSD and LBTA. The first was a complaint filed in October 2004, with the Office for Civil Rights ("OCR") at the United States Department of Education. Id. at Exhibit C. This complaint raised issues about segregation and the lack of inclusion of Hispanic and other minority students in the school. Id. The second complaint was filed in October 2004, with the Public Employment Relations Board ("PERB") against the LBTA. Id. at Exhibit D. This complaint alleged that Plaintiff was required to attend the PAR for unfounded, baseless, and retaliatory reasons. Id. There were also two complaints filed in October 2004 and November 2004, with the California Department of Education. Id. at Exhibits E and F. Plaintiff filed these complaints contending that teachers were teaching classes outside of their credentialed areas and that students were having difficulty understanding school announcements due to language difficulties.[3]

Plaintiff alleges that he was harassed over the next several years by the superintendent, teachers and members of LBTA. For example, he believes he was unjustly required to be on PAR for the remainder of the time he was employed in the district. Id. at Exhibit L. Moreover, he contends that none of the supervising teachers that he worked with in PAR spoke Spanish or had teaching credentials in foreign languages which was Plaintiff's areas of expertise.[4] Plaintiff alleges he complained to the union several times regarding this issue but the union refused to process his grievances. In addition to being placed in PAR, Plaintiff contends he received several formal letters of reprimand in front of other teachers, and he received biased and unsubstantiated performance evaluations. Id. at Exhibits B, H, J, K.

Although the exact timing is unclear, Plaintiff alleges that the district began administrative proceedings to terminate Plaintiff's employment. By early 2007, Plaintiff

---

[3] Although not outlined in the instant complaint, Plaintiff also attached a complaint he filed with the California Department of Fair Employment and Housing dated December 14, 2006. Doc. 15, Exhibit I. Additionally, Plaintiff also filed a Worker's Compensation case. (Doc. 15, at ¶ 38).

[4] Plaintiff has two degrees and two teaching credentials in Spanish and German.

contends that the teachers' union (the LBTA) refused to negotiate on his behalf. The superintendent offered him $106,000.00 to leave, however, Plaintiff refused the offer. He was suspended without pay on January 1, 2008.

Plaintiff had a dismissal hearing in July 2008 which he alleges was unfair and biased against him. Plaintiff was officially terminated on September 11, 2008. Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in February 2009. The EEOC issued a right to sue letter on July 28, 2011. Doc. 15 at Exhibit M. Plaintiff filed the instant action in this court on October 24, 2011. The Court dismissed Plaintiff's first complaint with leave to amend on February 16, 2012. Plaintiff subsequently filed the instant amended complaint.

As a result of Defendants' conduct, Plaintiff alleges he suffered lost wages, humiliation, emotional distress, mental and physical pain, and anguish. He alleges retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e -3 et seq ("Title VII"), creation of hostile work environment under Title VII, as well as state law claims for breach of contract, intentional infliction of emotional distress, and defamation of character. The SAC also adds claims for discrimination under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., and under Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131 et seq. Plaintiff seeks general, special, incidental, consequential and punitive damages, prejudgment interest, a complete resetting of his "employment clock" to 2003 before "all this began," and reinstatement of his position at LBHS. Doc. 15, Pg. 30.

C.     Analysis

The SAC fails to cure the deficiencies outlined in the Court's prior screening orders. This Court has repeatedly advised Plaintiff that any amended complaint needed to include one cause of action for each alleged violation of law, that specific defendants must be identified in each cause of action, and that each cause of action must include all the necessary elements. (Doc. 10, at pgs. 5-6 and Doc. 6, pgs. 5-6). Plaintiff was given a final opportunity to amend the claims previously raised, and to file an amended complaint only if he believed his claims were

cognizable based on the legal standards for each cause of action the Court had supplied. Plaintiff's SAC alleges two new claims but is otherwise duplicative of the first amended complaint. Therefore, dismissal is recommended.

### 1.     Title VII Claims

*Disparate Treatment*

42 U.S.C. § 2000e-2(b) provides that it shall be an unlawful employment practice for an employer to fail to refuse, or otherwise discriminate against, any individual because of his race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2. To establish a prima facie case of disparate treatment under Title VII Plaintiff must show that: "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." Peterson v. Hewlett-Packard Co., 358 F.3d 599, 603 (9th Cir. 2004); see also Raad v. Fairbanks North Star Borough School Dist., 323 F.3d 1185, 1195-96 (9th Cir. 2003) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Since Plaintiff has not alleged that he is a member of one of the protected classes, Plaintiff's amended complaint does not state a cause of action under this section.

*Hostile Work Environment*

To establish a prima facie case for a hostile-work environment claim, Plaintiff must establish that: (1) the defendants subjected the plaintiff to verbal or physical conduct based on his race [or one of the other protected classes]; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and created an abusive working environment. Surrell v. California Water Service Co., 518 F. 3d 1097, 1108 (9th Cir. 2008) citing Manatt v. Bank of America, NA, 339 F.3d 792, 798 (9th Cir. 2003).

As noted above, Plaintiff's amended complaint does not state a cause of action under this section because he was not subjected to Defendant's conduct because of *his* race or any one of the other protected classes.

*Retaliation*

Title VII also states that:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made *an unlawful employment practice* by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing *under this subchapter*.
42 U.S.C. 2000e-3(a).

Thus, an employee may prevail on a Title VII retaliation claim if the employee can show that he or she opposed an unlawful employment practice under Title VII, that he or she was the object of an adverse employment action, and that the adverse action was caused by his or her opposition to an unlawful employment action. In other words, "[t]itle VII prohibits retaliation only against individuals who oppose discriminatory employment practices or participate in complaints or investigations *of employment practices* prohibited by title VII." See Lowrey v. Texas A & M University System 117 F.3d 242, 249 (5th Cir. 1997) ("By its plain language therefore, Title VII does not prohibit retaliation against complainants who challenge [the availability of sports programming and opportunities because of one's sex,] as such complaints are wholly unrelated to the discriminatory employment practices proscribed by title VII"). "The mere fact that an employee is participating in an investigation or proceeding involving charges of some sort of discrimination, however, does not trigger the [retaliation protections under Title VII]; the underlying discrimination must be reasonably perceived as discrimination under Title VII." Learned v. City of Bellevue, 860 F. 2d 928, 932 (9th Cir. 1988). The opposed conduct must fall within the protection of Title VII to sustain a claim of unlawful retaliation. Silver v. KCA, Inc., 586 F. 2d 138, 141-142 (9th Cir. 1978) (stressing the necessity that any complaints based on Title VII must relate to an *unlawful employment practice*).

Here, Plaintiff alleges that he was terminated from his employment and he filed a complaint with the EEOC. However, the reason that he was allegedly retaliated against was not because he himself is a member of the protected class, or that he filed a complaint alleging an

7

unlawful employment action based on one of the protected classes. Instead, the alleged retaliation and harassment was the result of : 1) complaints he filed that the school district was engaging in racially discriminatory educational practices against Hispanic students, and 2) that the school district was out of compliance regarding teacher credentialing. Thus, Plaintiff's amended complaint has not stated a claim under Title VII, the purpose of which is to prohibit *unlawful employment practices* and/or to protect individuals who report *unlawful employment practices* based on race, color, religion, sex, or national origin.

### 2. Civil Rights claims

*The Section 1983 Claim*

The Civil Rights Act provides as follows:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress. 42 U.S.C. § 1983...

The statute plainly requires that there be an actual connection or link between the actions of Defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Plaintiff has failed to link a named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights. Moreover, Plaintiff has failed to identify a constitutional violation, or a violation of a federal statute that creates an individually enforceable right in the class of beneficiaries to which he belongs that serves as the basis of the claim. City Of Rancho Palos Verdes, Cal., v. Abrams, 544 U.S. 113, 120 (2005).

*Respondeat Superior for 1983 claims*

"Although there is no pure *respondeat superior* liability under § 1983, a supervisor [may be held] liable for the constitutional violations of subordinates 'if the supervisor participated in

or directed the violations, or knew of the violations and failed to act to prevent them.'" Hydrick v. Hunter, 500 F.3d at 988 (quoting Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)). Plaintiff has provided no information that any supervisor participated in constitutional violations, or knew of them but did nothing to prevent them.

*The Section 1981 Claim*

42 U.S.C. § 1981 generally provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> For purposes of this section, the term "make and enforce contracts" includes the making performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.

42 U.S.C. § 1981(a) & (b).

The legal principles guiding a court in a Title VII dispute apply with equal force in a § 1981 action. See, Manatt v. Bank of America, NA , 339 F.3d at 797 -798 (9th Cir. 2003); EEOC v. Inland Marine Indus., 729 F.2d 1229, 1233 n. 7 (9th Cir.1984) ("A plaintiff must meet the same standards in proving a § 1981 claim that he must meet in establishing a ... claim under Title VII ...."); see also Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir.2000) (analogizing a § 1981 claim to a Title VII claim); Danco, Inc. v. Wal Mart Stores, Inc., 178 F.3d 8, 13 (1st Cir.1999) (noting that the language in § 1981(b) "tracks language of Title VII prohibiting discrimination with respect to 'compensation, terms, conditions, or privileges of employment' "); Jurado v. Eleven-Fifty Corp., 813 F.2d 1406, 1412 (9th Cir.1987).  Plaintiff cannot state a claim under § 1981 because similar to his Title VII claims, he is not alleging he is a member of a protected class or that he suffered adverse employment actions based on *his* race.

*The Section 1985 Claim* [5]

A claim brought for violation of section 1985(3) requires "four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of

---

[5] Plaintiff lists 28 U.S.C. § 1985 on the first page of the complaint in the caption. However, it is not listed in any of the causes of action. Therefore, the Court includes this analysis in an abundance of caution.

persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992) (citation omitted).  A racial, or perhaps otherwise class-based, invidiously discriminatory animus is an indispensable element of a section 1985(3) claim. Sprewell v. Golden State Warriors, 266 F.3d 979, 989 (9th Cir. 2001) (quotations and citation omitted).  Restraint must be exercised in extending section 1985(3) beyond racial prejudice. Butler v. Elle, 281 F.3d 1014, 1028 (9th Cir. 2002) (citation omitted). A claim for violation of section 1985(3) requires the existence of a conspiracy and an act in furtherance of the conspiracy. Holgate v. Baldwin, 425 F.3d 671, 676 (9th Cir. 2005) (citing Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992)).  A mere allegation of conspiracy is insufficient to state a claim. Id. at 676-77.

Moreover, the Ninth circuit ruled that in order to state a claim under § 1985(3) "*the plaintiff* must be a member of a class that requires special federal assistance in protecting its civil rights." McCalden v. California Library Ass'n, 955 F. 2d 1214,1223 (9th Cir. 1990); Gerritsen v. de la Madrid Hurtado, 819 F.2d 1511, 1519 (9th Cir.1987) (finding that Plaintiff did not state a cause of action under section 1985(3) because he had not alleged any class-based discrimination against him).

This section does not relate to Plaintiff's claims as *he, himself*, is not a member of a class that requires special federal assistance in protecting civil rights, nor has he demonstrated racial animus against him. Furthermore, 28 U.S.C. § 1343 only confers jurisdiction on federal courts to hear these claims.  It is not a statute that can be cited to establish a cause of action.

**3.      Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA")**

"Title II of the ADA and § 504 of the RA both prohibit discrimination on the basis of disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Section 504 of

the RA provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794.

"To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." Lovell, 303 F.3d at 1052. "To establish a violation of § 504 of the RA, a plaintiff must show that (1) [he] is handicapped within the meaning of the RA; (2) [he] is otherwise qualified for the benefit or services sought; (3) [he] was denied the benefit or services solely by reason of [his] handicap; and (4) the program providing the benefit or services receives federal financial assistance." Id.

This section does not relate to Plaintiff's claims as he has not alleged that he is disabled or handicapped or that he suffered in any way because of a disability or handicap.

*Statute of Limitations*

Plaintiff was allegedly terminated from employment on September 11, 2008. He did not file this action until October 24, 2011, more than three years later. Although the statute of limitations is not a basis for this dismissal, Plaintiff was previously advised that several causes of action in his case, including his section 1981, 1983 and 1985 claims may be barred by the statute of limitations. (Doc. 10, pgs. 12-13). Moreover, Plaintiff has listed 28 U.S.C. § 1658 as a cause of action. This statute is not a cause of action but rather discusses time limitations for certain civil rights cases. The statute of limitations for a Section 1981 retaliation claim is subject to the four year statute of limitations in 28 U.S.C. § 1658. Johnson v. Lucent Technologies, 653 F. 3d 1000, 1008 (9th Cir. 2011). Plaintiff is advised that the determination of the statute of limitations period for civil rights claims involves a complex analysis. Plaintiff is once again encouraged to seek the advise of an attorney to determine whether his case is time barred.

///

///

*Federal Court Jurisdiction*

Plaintiff has also alleged state law claims of defamation, intentional infliction of emotional distress, and breach of contract. The Court has previously advised Plaintiff that if he could not state a federal claim, the Court would recommend that the entire matter, including his California law claims, be dismissed.  Since the Court will recommend that the claims over which it had original jurisdiction be dismissed, it declines to exercise supplemental jurisdiction over these state law claims. See 28 U.S.C. § 1367(c)(3); see also Ove v. Gwinn, 264 F.3d 817, 826 (9th Cir.2001) (holding that the district court may decline to exercise supplemental jurisdiction over related state-law claims once it has dismissed all claims over which it had original jurisdiction).

## RECOMMENDATIONS

The Court finds that the second amended complaint fails to state a cognizable federal claim. The Court previously dismissed Plaintiff's previous two complaints with leave to amend while informing Plaintiff therein of the deficiencies in his claims.  Because Plaintiff has failed to amend his pleadings to cure the deficiencies in a meaningful way, the Court will not afford Plaintiff further leave to amend. See Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992) (dismissal with prejudice upheld where the court had instructed plaintiff regarding deficiencies in prior order dismissing claim with leave to amend). Accordingly, this Court recommends the following :

1. Plaintiff's second amended complaint be **DISMISSED** without leave to amend for failure to state a claim; and

2. The matter be  CLOSED.

These findings and recommendations will be submitted to the Honorable Anthony W. Ishii pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time

may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

    Dated:   **June 6, 2013**                      /s/ **Gary S. Austin**
                                                      UNITED STATES MAGISTRATE JUDGE